RONALD O. KAYE, SBN 145051
E-mail: rok@kmbllaw.com
CAITLIN WEISBERG, SBN 262779
E-mail: cweisberg@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

Attorneys for Plaintiffs
ALEX AGUILAR and P.A., By and Through Her Guardian Ad Litem

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX AGUILAR, JR., and P.A., by and through her Guardian Ad Litem, Florence Ahumada, AND THE ESTATE OF ALEX AGUILAR SR., <br><br>Plaintiffs, <br><br>vs. <br><br>CITY OF LOS ANGELES, CHIEF CHARLIE BECK, ANDREW HUDLETT, MATTHEW MEDINA, SERGIO MELERO, DANTE PAGULAYAN, ENRIQUE LOPEZ, AND DOES 1-10, INCLUSIVE, <br><br>Defendants. | CASE NO: 2:17-CV-04382-CBM-MRW <br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:** <br>**(1) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, INDIVIDUAL LIABILITY;** <br>**(2) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, *MONELL* VIOLATIONS.** <br>**(3) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, SUPERVISORY LIABILITY;** <br>**(4) NEGLIGENCE;** <br>**(5) VIOLATION OF GOVERNMENT CODE § 845.6 – FAILURE TO PROVIDE IMMEDIATE MEDICAL CARE;** <br>**(6) VIOLATION OF CALIFORNIA CIVIL CODE § 51.1;** <br>**(7) ASSAULT AND BATTERY;** <br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This is a civil rights and wrongful death/survival action that seeks compensatory and punitive damages from Defendants in relation to the death of Alex Aguilar Sr. ("decedent") on June 9, 2016, which occurred while he was in the custody of the Los Angeles Police Department ("LAPD"). By their wrongful acts and omissions, Defendants caused Alex Aguilar Sr. and Plaintiffs, his children and successors in interest, to be deprived of rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of California.

## II. JURISDICTION AND VENUE

2. This action is brought by Plaintiffs ALEX AGUILAR, JR., P.A., and the ESTATE OF ALEX AGULAR SR. It asserts causes of action under, *inter alia*, 42 U.S.C. § 1983, California Government Code § 845.6, and California common law.

3. This Court has jurisdiction over the federal civil rights claims alleged herein pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(civil rights). As Plaintiffs' state law claims arise out of a common nucleus of facts, the court has jurisdiction over them pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

4. The acts and omissions complained of occurred on June 9, 2016, within the Central District of California. Therefore, venue lies in this District pursuant to 28 U.S.C. § 1391.

5. Plaintiffs timely filed an administrative claim with the City of Los Angeles pursuant to Cal. Gov't Code § 910. The claim was denied on December 19, 2016.

## III. PARTIES

6. Plaintiff P.A., a 10-year-old minor, is the daughter and a successor in interest and an heir at law of Alex Aguilar Sr., the deceased. Florence Ahumada has been appointed by the Court as Guardian ad Litem for P.A. Ms. Ahumada is

the grandmother of P.A., and P.A. has resided at Ms. Ahumada's home in the Central District of California for the past eight years. Plaintiff P.A. is a resident of the State of California and resided within the jurisdiction of the State of California at all times herein alleged. She brings this claim for herself personally, as Alex Aguilar Sr.'s successor in interest and heir, as the personal representative of the estate, and, as applicable, pursuant to California Code of Civil Procedure §§ 377.30 and 377.60.

7. Plaintiff ALEX AGUILAR JR. is the son, a successor in interest and an heir at law of Alex Aguilar Sr., the deceased. Plaintiff is a resident of the State of California and resided within the jurisdiction of the State of California at all times herein alleged. He brings this claim for himself personally, as Alex Aguilar's successor in interest and heir, as the personal representative of the estate and, as applicable, pursuant to California Code of Civil Procedure §§ 377.30 and 377.60.

8. Defendant CITY OF LOS ANGELES ("CITY") is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California. The Los Angeles City Police Department ("LAPD") is, and at all times herein alleged was, an agency of the City of Los Angeles.

9. Defendant Chief CHARLIE BECK is the Chief and Supervisor of the Los Angeles Police Department. He is sued in his official and individual capacity. He was charged by law and was responsible for the supervision of police officer DOES 1 through 20 and other employees under his command in LAPD and for the training, reprimands and corrective actions of persons, agents and employees working under his chain of command within said LAPD.

10. Upon information and belief, at all relevant times, Defendants ANDREW HUDLETT (badge number 27306) (hereinafter "HUDLETT"), MATTHEW MEDINA (badge number 40331) (hereinafter "MEDINA"), SERGIO MELERO (badge number 39563) (hereinafter "MELERO"), DANTE

2

PAGULAYAN (badge number 40380) (hereinafter "PAGULAYAN"), and ENRIQUE LOPEZ (badge number 36989) (hereinafter "LOPEZ") were police officers, detectives, sergeants, captains, commanders, and/or civilian employee agents, policy makers, and representatives of the Los Angeles Police Department, as well as employees, agents, policy makers, and representatives of Defendant CITY. At all relevant times, said Defendants were acting under the color of law and within the course and scope of their employment with the CITY and/or the LAPD. These Defendants are natural persons and are sued both individually and in their official capacities.

11. Plaintiffs are informed and believe and thereon allege that Defendants sued herein as DOES 1 through 10, inclusive, were employees of the CITY OF LOS ANGELES, including but not limited to officers of the LAPD, and were at all relevant times acting in the course and scope of their employment and agency. Each Defendant is the agent of the other. Plaintiffs allege that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein, and Plaintiffs will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained.

## IV.  GENERAL ALLEGATIONS

12. Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

13. Each paragraph of this complaint is expressly incorporated into each cause of action which is a part of this complaint.

3

14. The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiffs.

## V. **FACTUAL ALLEGATIONS**

15. On June 9, 2016, at approximately 6:30 p.m., LAPD Officer Noriega arrested Alex Aguilar Sr. ("Mr. Aguilar") for being an unlicensed driver and having no proof of insurance, in violation of California Vehicle Code §§ 12500 and 16028(a). Officers MEDINA and MELERO took Mr. Aguilar into custody of the Los Angeles Police Department (LAPD) and transported him to the Harbor Community Police Station at 2175 John S. Gibson Boulevard, San Pedro, California 90731. According to Officer MELERO's interview with the Force Investigation Division (FID), Mr. Aguilar was 100% cooperative and in a relaxed mood during the transport.

16. At the Harbor Community Police Station, Mr. Aguilar was placed in a holding cell at which time officers MEDINA and MELERO began a strip search of Mr. Aguilar.

17. Officers MEDINA and MELERO reported that during the search Mr. Aguilar placed a small bindle of heroin covered by a green plastic bag into his mouth with the intention of swallowing it. Upon placing the small bindle in his mouth, Officers MEDINA and MELERO began beating and tasering Mr. Aguilar, ordering him to spit out the controlled substance. The beating of Mr. Aguilar resulted in multiple blunt force injuries to his head. On information and belief, as a result of the repeated discharge of the TASER X26, and the multiple head strikes to Mr. Aguilar and other use of force by Officers MEDINA and MELERO, the small bindle of heroin became lodged in Mr. Aguilar's throat, and Mr. Aguilar became incapacitated such that he could not "cough" it out. The plastic bindle obstructed Mr. Aguilar's airway, preventing him from breathing, and ultimately caused his death by asphyxiation.

18. According to reports, when Mr. Aguilar attempted to swallow the bindle, Officer MEDINA pushed Mr. Aguilar's head down, and Officer MELERO attempted to restrain Mr. Aguilar's arms to keep him from swallowing the bindle, while ordering him to spit out the controlled substance. At this point, according to the officers, Mr. Aguilar fell to the floor on all fours, with his back to the officers. While he was down on the ground on all fours, the officers stated that they continued to try to gain control of Mr. Aguilar's arms to restrain him.

19. After a short time period, Officer MEDINA discharged his TASER X26 electrical control device to Mr. Aguilar at close range while Mr. Aguilar's back was facing him. At the time he applied the TASER, Officer MEDINA was aware that Mr. Aguilar was attempting to swallow an object. Officer MEDINA applied the TASER to Mr. Aguilar's back in the drive stun mode, causing thousands of volts of electricity to be discharged into his body. After using the TASER, Mr. Aguilar made no sounds with his mouth, indicating that the bindle of heroin became lodged in his posterior pharynx at this time. Officer MEDINA used the TASER on Mr. Aguilar at least two more times (the TASER log revealed four five-second bursts, and one two-second burst), in both dart mode and drive stun mode. Officer MEDINA's use of the TASER, which was found to be out of policy by Chief of Police Charlie Beck, constituted an unreasonable and unjustified use of force and was independently coercive from the arrest and detention of Mr. Aguilar. On information and belief, Officer MEDINA's initial use of the TASER caused the bindle of heroin to be lodged in Mr. Aguilar's throat, and the repeated use of the TASER prevented Mr. Aguilar from unblocking his airway.

20. Officer MELERO struck Mr. Aguilar in the face multiple times with his fist. The striking of Mr. Aguilar – independently and in combination with the use of the TASER – constituted an unreasonable and unjustified use of force and was independently coercive from the arrest and detention of Mr. Aguilar.

21. On information and belief, while Mr. Aguilar's airway was obstructed, preventing him from breathing, he began gasping for air, choking, and/or otherwise demonstrating his immediate and serious medical need. Mr. Aguilar soon fell to the floor, unconscious, and lost control of his bladder due to lack of oxygen, further demonstrating his immediate and serious medical need. While Mr. Aguilar was on the floor, the officers could hear that he was choking and observed that he was pale and turning blue. The officers handcuffed Mr. Aguilar and turned him on his side.

22. At some point while Mr. Aguilar was still alive but choking, Sergeant HUDLETT and Officers PAGULAYAN and LOPEZ arrived on the scene. On June 9, 2016, Defendant HUDLETT was acting as the watch commander for Watch 5 at the Harbor Community Police Station. Officers PAGULAYAN and LOPEZ were on duty as LAPD officers.

23. Sergeant HUDLETT observed that Mr. Aguilar was choking and instructed officers to attempt to perform a Heimlich Maneuver. Officers reported that they removed Mr. Aguilar's handcuffs, rolled him onto his back, and attempted to administer the Heimlich Maneuver while Mr. Aguilar was lying on the ground. At no point, even after Mr. Aguilar was handcuffed and/or unconscious, did any officer attempt to remove the object from his mouth. Sergeant HUDLETT specifically instructed the officers not to put their fingers in his mouth. According to the officers' own reports, the bindle obstructing Mr. Aguilar's airway was large and would have been visible upon inspection of Mr. Aguilar's mouth after he lost consciousness.

24. Despite the obviousness of the necessity for emergency medical intervention, Officers MEDINA and MELERO failed to discontinue their use of force and, along with Sergeant HUDLETT, Officer PAGULAYAN and Officer LOPEZ, failed to take any actions to dislodge to bindle of controlled substance or summon emergency medical assistance in a timely fashion. Defendants failed to

follow standard and appropriate emergency medical protocol for the circumstances. Consequently, they watched Mr. Aguilar stop breathing and die.

25. At 7:59 p.m., Mr. Aguilar was pronounced dead. The cause of death was determined by the Los Angeles County Medical Examiner-Coroner to be Asphyxia.

## VI. PARTICIPATION, STATE OF MIND AND DAMAGES

26. All Defendants acted without authorization of law.

27. Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved or acquiesced in the violations alleged herein.

28. As joint actors with joint obligations, each Defendant was and is responsible for the failures and omissions of the other.

29. Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiffs' rights.

30. Each Defendant acted with deliberate indifference to or, reckless disregard for, a person's right to adequate medical care in a custodial facility, Mr. Aguilar's serious medical need, and the risk of harm to Mr. Aguilar as a result of defendants' actions and inactions.

31. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Mr. Aguilar suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately, loss of life during the time period in which officers of the LAPD used force on him and failed to provide appropriate medical care and treatment for his urgent medical condition, and in particular, suffered acute and unmitigated mental and physical suffering during the hours preceding his death on June 9, 2016.

32. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages in a sum to be determined at trial.

33. Due to the acts of the Defendants, Plaintiffs have suffered, and continue to suffer, and are likely to suffer in the future, extreme and severe mental anguish.

34. As a further result of the conduct of each of these Defendants, Plaintiffs have been deprived of familial relationships, including the loss of their father, Alex Aguilar, Sr. and the emotional impact on their family unit as a whole.

35. The aforementioned acts of the Defendants, and each of them, were willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard for or with deliberate indifference to the constitutional rights of Mr. Aguilar and the Plaintiffs, entitling Plaintiffs to exemplary and punitive damages from each Defendant, other than Defendant CITY, in an amount to be proven at the trial of this matter.

36. By reason of the above described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs that they might vindicate the loss and impairment of their and Mr. Aguilar's rights, and by reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure §1021.5 and any other applicable provision of law.

# FIRST CLAIM FOR RELIEF

## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
### (Against All Individual Defendants)

37. Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

38. Plaintiffs are informed and believe and, based on such information and belief, allege that Defendants subjected Mr. Aguilar to excessive force and unjustified infliction of harm through both beatings and the discharge of the TASER X26. Defendants used unreasonable force directly, participated in the use of unreasonable force by other Defendants, acted in concert or in joint action with the use of unreasonable force, and/or failed to intervene to prevent the use of unreasonable force.

39. Plaintiffs are informed and believe and, based on such information and belief, allege that Defendants acted with deliberate indifference to Mr. Aguilar's serious medical needs and safety, in that they failed to provide and failed to summon adequate medical treatment when Mr. Aguilar was asphyxiating and in fact further endangered Mr. Aguilar and contributed to his death by using inappropriate force on him while he was asphyxiating, including the use of the TASER X26.

40. Mr. Aguilar was subjected to deprivation of rights by these Defendants, and each of them, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of United States, State of California, which rights included, but are not limited to, privileges and immunities secured to Mr. Aguilar by the Fourth or Fourteenth Amendments to the United States Constitution and laws of the United States, and particularly his right to access to medical care and treatment for his serious but treatable condition which was a cause of his serious injury and harm.

41. Plaintiffs P.A. and ALEX AGUILAR JR. allege that these Defendants' wrongful conduct legally caused a deprivation of their constitutionally protected liberty interest in familial companionship, love and society of their father.

42. As a direct and proximate result of acts and omissions of Defendants, Plaintiffs sustained injury and damage as alleged herein, in an amount to be proved.

## SECOND CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. § 1983 – *MONELL* VIOLATIONS
### (Against Defendant CITY)

43. Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

44. Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, Defendant CITY OF LOS ANGELES and Los Angeles Police Department, with deliberate indifference to, and/or conscious or reckless disregard for the safety and constitutional rights of Mr. Aguilar, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied unconstitutional policies, practices and customs, including, but not limited to:

   a. Subjecting citizens, including Mr. Aguilar, to unreasonable uses of force against their persons;
   b. The failure to require proper assessment of the need for urgent medical care and treatment of a detainee/inmate prior to or during the booking process;
   c. The failure to provide medical care for detainees with serious medical needs and/or to provide them access to medical care and treatment;
   d. The failure to institute, require and enforce proper and adequate training, supervision, policies, and procedures concerning applying force,

10

      including with respect to the use of an electronic control device, such as a TASER X26, on a person who has attempted to swallow a foreign object or who is asphyxiating;

  e. The failure to institute, require and enforce proper and adequate training, supervision, policies, and procedures concerning the handling of detainees who are in LAPD custody who manifest or complain of serious medical conditions;

  f. The cover-up of violations of constitutional rights by any, or all, of the following:

      i. By failing to properly investigate and/or evaluate complaints or incidents related to the claimed customs, policies, practices, and procedures described above in paragraphs (a) through (e);

      ii. By ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity at the CITY and/or LAPD as described above in paragraphs (a) through (e);

      iii. By allowing, tolerating, and/or encouraging police officers and jail personnel to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

  g. To allow, tolerate and/or encourage a "code of silence" among law enforcement officers and LAPD personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of LAPD;

    h. To use or tolerate inadequate, deficient and improper procedures for handling, investigating and reviewing complaints of officer misconduct, including claims made under Cal. Gov. Code § 910 et seq.; and

    i. To condone lax or lack of supervision by line supervisors who fail to report or investigate officers and subordinate supervisors who fail to provide reasonable security and/or protection resulting in detainee injury and/or death.

45. The actions of the CITY OF LOS ANGELES including the Los Angeles Police Department set forth herein were a moving force behind the violations of Plaintiffs' and Mr. Aguilar's constitutional rights as set forth in this complaint.

46. As a direct and proximate result of Defendant CITY OF LOS ANGELES' policies, practices, and customs, Plaintiffs sustained injury and damage as alleged herein, in an amount to be proved.

### THIRD CLAIM FOR RELIEF

**DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983 – FAILURE TO SUPERVISE, TRAIN AND TAKE CORRECTIVE MEASURES CAUSING CONSTITUTIONAL VIOLATIONS**
**(Against Defendant Chief BECK, Defendant Supervisor HUDLETT, and Supervisory Defendant DOES 6-10)**

47. Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

48. Plaintiffs are informed and believe and thereon allege that Defendant Chief BECK, Defendant Supervisor HUDLETT, and supervisory Defendants DOES 6-10 knew, or in the exercise of reasonable care, should have known of a history and propensity and pattern at the time of this incident for employees of the Los Angeles Police Department to fail to provide reasonable security, monitoring and supervision of detainees such as Mr. Aguilar; to fail to comply in

implementing policies and procedures or ensuring the enforcement thereof; to fail to train and supervise police officers with regard to the improper use of a TASER in order to prevent the foreseeable and preventable death of Mr. Aguilar; to fail to train and supervise police officers with regard to the use of force; and to fail to train and supervise police officers with regard to providing adequate medical care. Defendants' disregard of this knowledge or failure to adequately investigate and discover and correct such acts or failures to act was a moving force which caused the violation of Plaintiffs' and Mr. Aguilar's constitutional rights.

49. Plaintiffs are further informed and believe and thereon allege that Defendants BECK, HUDLETT, and DOES 6-10, knew, or in the exercise of reasonable care should have known, of a pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these Defendants had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate or instruct police officers, and/or agents or employees, and to retain police officers who had a history of inappropriate conduct, and as a result Alex Aguilar was harmed in the manner threatened by the pattern or practice.

50. As a direct and proximate result of the conduct of Defendants BECK, HUDLETT, and Does 6-10, as described above, Plaintiffs sustained injury and damage as alleged herein, in an amount to be proved.

## FOURTH CLAIM FOR RELIEF

### NEGLIGENCE
### (Against All Individual Defendants)

51. Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

52. Defendants had a duty to provide reasonable security and render access to and delivery of medical care, treatment and/or emergency services to Mr.

Aguilar for his medical condition but breached their duty and were negligent in the performance of their duties and this negligence caused Mr. Aguilar's death.

53. Defendants BECK, HUDLETT, and Supervisor DOES 6-10, acting within the course and scope of their employment with the Los Angeles Police Department, had a duty to train, supervise, and assure the competence of their employee/agents, but breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, evaluating the competency and retaining their Defendant police officers and/or employees and/or agents. This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers and other staff created an unreasonable risk of harm to persons such as Mr. Aguilar.

54. The individually named Defendants breached their duty of care to provide reasonable security and render access to and delivery of medical care, treatment and/or emergency services to Mr. Aguilar and failed to prevent his death by asphyxiation.

55. As a direct and proximate result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, and as a result of their breach of duty of care to Mr. Aguilar, Plaintiffs sustained injury and damage as alleged herein, in an amount to be proved.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA GOV'T CODE § 845.6
(Against All Defendants)

56. Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

57. At all times mentioned herein, Mr. Aguilar was an arrestee/detainee in the custody of the Los Angeles Police Department and Defendants, who were acting

within the course and scope of their employment with the Los Angeles Police Department.

58. Prior to his death, Defendants knew or had reason to know that Mr. Aguilar was in need of immediate medical care and that he was exhibiting, manifesting, and/or complained that he was suffering from a serious medical condition. Nevertheless, Defendants failed to take reasonable action to summon such medical care.

59. Defendants' conduct was in violation of California Government Code § 845.6, and as a direct and proximate result of such violation, Plaintiffs sustained injury and damage as alleged herein, in an amount to be proved.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1
### (Against All Individual Defendants)

60. Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

61. Defendants, by their conduct, interfered by threats, intimidation, or coercion, or attempted to interfere by threats, intimidation or coercion, with the exercise or enjoyment of the decedent's rights as secured by, *inter alia*, the Fourth and Fourteenth Amendments to the United States Constitution, the laws of the United States, Article 1, § 13 of the California Constitution, California Civil Code § 43, and the laws of the State of California, including the decedent's right to be secure in his person, free from bodily restraint and harm, and free from excessive force.

62. Defendants' conduct was in violation of Cal. Civ. Code § 52.1, and as a direct and proximate result of such violation, Plaintiffs sustained injury and damage as alleged herein, in an amount to be proved.

## SEVENTH CLAIM FOR RELIEF

### ASSAULT AND BATTERY
### (Against Defendants CITY, MEDINA and MELERO)

63. Plaintiffs reallege all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

64. The City of Los Angeles is liable for the violations of its employees under California Government Code Section 815.2(a).

65. Defendants MEDINA and MELERO, acting within the scope of their employment as law enforcement officers for the Los Angeles Police Department, assaulted and battered Mr. Aguilar, causing injury.

66. As a direct and proximate result of the aforementioned acts of Defendants, Plaintiffs sustained injury and damage as alleged herein, in an amount to be proved.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for judgement against Defendants, and each of them, according to proof, as follows:

1. General and compensatory damages in an amount according to proof;

2. Special damages in an amount according to proof;

3. Exemplary and punitive damages against each Defendant, except the CITY OF LOS ANGELES, in an amount according to proof;

4. Costs of suit, including attorneys' fees, under 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5 and any other applicable provision of law; and,

/ / /

/ / /

/ / /

/ / /

/ / /

5. Such other relief as may be warranted or as is just and proper.

Respectfully submitted,

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: February 22, 2018            By: _/s/    Ronald O. Kaye_
                                         RONALD O. KAYE
                                         Attorneys for Plaintiffs
                                         P.A. and Alex Aguilar

## JURY DEMAND

Trial by jury of all issues is demanded.

Respectfully submitted,

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: February22, 2018             By: _/s/    Ronald O. Kaye_
                                         RONALD O. KAYE
                                         Attorneys for Plaintiffs
                                         P.A. and Alex Aguilar

17