RONALD O. KAYE, SBN 145051
Email: rok@kmbllaw.com
CAITLIN WEISBERG, SBN 262779
E-mail: cweisberg@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

Attorneys for Plaintiffs

CHANGES HAVE BEEN MADE
TO THIS DOCUMENT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX AGUILAR, JR., and P.A., by and through her Guardian Ad Litem, Florence Ahumada, AND THE ESTATE OF ALEX AGUILAR, SR., <br><br>          Plaintiffs, <br><br>v. <br><br>CITY OF LOS ANGELES, ET AL., <br><br>          Defendants. | CASE NO. 17-04382-CBM (MRWx) <br><br> [HONORABLE CONSUELO B. MARSHALL] <br><br> ~~[PROPOSED]~~ **FINAL PRETRIAL CONFERENCE ORDER** <br><br> PTC:   October 2, 2018 <br> Trial:  ~~October 30, 2018~~ 4/23/2019 <br> Ctrm:  8B |

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

**1.   PARTIES AND PLEADINGS**

The parties are:

- Plaintiffs: ESTATE OF ALEX AGUILAR JR.; P.A., by and through her guardian ad litem Florence Ahumada; ALEX AGUILAR III. ("PLAINTIFFS")
- Defendants: CITY OF LOS ANGELES, SERGIO MELERO, DANTE PAGULAYAN, ANDREW HUDLETT, ENRIQUE LOPEZ ("CITY DEFENDANTS"); MATTHEW MEDINA ("DEFENDANT MEDINA")

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

- Plaintiffs' First Amended Complaint (Dkt. No. 34)
- Answer by Defendants City, Melero, Pagulayan, Hudlett, Lopez (Dkt. No. 43)
- Answer by Defendant Medina (Dkt. No. 45)

## 2.   JURISDICTION AND VENUE

Federal jurisdiction and venue are invoked upon the following grounds: Plaintiff has asserted claims pursuant to 42 U.S.C. § 1983 for violations of the rights of Mr. Aguilar (decedent) and Plaintiffs under the United States Constitution as well as pendant state law claims. The Court has federal question jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

Plaintiffs' claims are based on conduct and events that occurred within the geographical territory of the Central District of California and venue therefore lies in this district pursuant to 28 U.S.C. § 1391(b).

The facts requisite to federal jurisdiction and venue in the Central District of California are admitted.

2

**3. TRIAL ESTIMATE**

Trial is estimated to take 10 full court days, including jury selection, presentation of evidence, argument, and instruction on all claims, assuming trial is not bifurcated or otherwise separated into phases.

**4. JURY TRIAL**

The trial is to be a jury trial. At least seven (7) days prior to the trial date, the parties shall lodge and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by Local Rule 51-1, (b) proposed verdict forms; and (c) any special questions requested to be asked on voir dire.

**5. ADMITTED FACTS**

The following facts are admitted and require no proof:

*See* attached Fact Stipulations.

**6. UNDISPUTED FACTS, SUBJECT TO EVIDENTIARY OBJECTIONS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

**7. CLAIMS AND DEFENSES OF THE PARTIES**

    **A. PLAINTIFFS[1]**

Plaintiffs plan to pursue the following claims against the following defendants:

---

[1] The claims in this section are not numbered according to the causes of action listed in the operative complaint, which are organized differently. This reorganization does not waive any causes of action, and Plaintiffs plan on pursuing all causes of action listed in the operative complaint, which are re-organized and set forth above, except for those state law causes of action that Plaintiffs explicitly abandoned in their Notice re: State Law Claims (Dkt. No. 93) and Memorandum of Contentions of Fact and Law (Dkt. No. 131).

**CLAIM 1:**[2]

    **(a)**    **Claim:** 42 U.S.C. § 1983 Claim re: Excessive Force (4th / 14th Amendments)

    **(b)**    **Defendants:** Melero, Medina, Pagulayan, City (*Monell*)

    **(c)**    **Elements:**

        (1) Individual defendants acted under color of law;

        (2) Individual defendants deprived Mr. Aguilar of his rights under the constitution by using force that was not objectively reasonable under all the circumstances known to them, by participating in the use of unreasonable force against Mr. Aguilar, or by failing to intervene to prevent the use of unreasonable force against Mr. Aguilar;

        (3) [CITY / *MONELL* ONLY:] Defendant City's policies, practices, customs and/or training or supervision were a moving force behind the individual defendants' deprivation of Mr. Aguilar's rights;

    **(d)**    **Summary of Key Evidence in Support of Claim:**

- Individual Defendants' statements & testimony re: events of June 9, 2016
- Photographs and video re: events of June 9, 2016
- Expert opinion testimony re: use of force; taser; LAPD policies, practices, & training; and Mr. Aguilar's injuries
- LAPD / POST policy and training documents

---

[2] For Plaintiffs' 42 U.S.C. § 1983 claims (listed here as Claims 1-3), Plaintiffs P.A. and Alex Aguilar III also assert that Defendants' violations of Mr. Aguilar's constitutional rights caused them to be deprived of their Fourteenth Amendment liberty interest in familial companionship, love, and society of their father. *See Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir.1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1041 n.1 (9th Cir. 1999).

**CLAIM 2:**

**(a)**   **Claim:** 42 U.S.C. § 1983 Claim re: Deliberately Indifferent Medical Care (14th Amendment)

**(b)**   **Defendants:** Melero, Pagulayan, Hudlett (individual and supervisor), Lopez, City (*Monell*)

**(c)**   **Elements:**

(1) Individual defendants acted under color of law;

(2) Individual defendants deprived Mr. Aguilar of his rights under the constitution by their deliberately indifferent actions and failures to act in response to Mr. Aguilar's serious medical need: (a) Mr. Aguilar faced a serious medical need; (b) the defendants knew or should have known of Mr. Aguilar's serious medical need and disregarded it by failing to take reasonable measures to address it; and (c) the acts / failures to act of the defendants caused harm to Mr. Aguilar;

(3) [HUDLETT AS SUPERVISOR ONLY:] Defendant Hudlett (a) participated in the deprivation of Mr. Aguilar's rights; directed his subordinates actions that deprived Mr. Aguilar's rights; set in motion a series of actions or failures to act by his subordinates that would cause the Deprivation of Mr. Aguilar's rights; failed to intervene to prevent the deprivation of Mr. Aguilar's rights; and/or engaged in conduct that showed a reckless or callous indifference to the deprivation of Mr. Aguilar's rights; and (b) Defendant Hudlett's conduct was a moving force behind the individual defendant's deprivation of Mr. Aguilar's rights

(4) [CITY / *MONELL* ONLY:] Defendant City's policies, practices, customs and/or training or supervision were a moving force behind the individual defendants' deprivation of Mr. Aguilar's rights;

**(d)**   **Summary of Key Evidence in Support of Claim:**

- Individual Defendants' statements & testimony re: events of June 9, 2016

- Photographs and video re: events of June 9, 2016

5

- Expert opinion testimony re: use of force; taser; LAPD policies, practices & training; first aid and emergency medical care; and Mr. Aguilar's injuries and indicated treatment options
- LAPD / POST policy and training documents

**(e)**   **Defendants' objections:**

Defendants contend that these are the appropriate elements for this claim against Defendants Melero, Medina, Pagulayan, and Lopez:

1. Alex Aguilar suffered serious injury during the seizure (detention/arrest);

2. Defendants were aware of Alex Aguilar's serious injury and need for medical care;

3. Defendants disregarded Alex Aguilar's need for medical care;

4. Defendants failed to take objectively reasonable steps to summon medical care for Alex Aguilar.

Defendants contend that these are the appropriate elements for this claim against Defendant Hudlett:

1. Defendant Hudlett acted under color of law;

2. The act(s) of the Defendant Hudlett's subordinates, Defendants Medina, Melero, Pagulayan, and Lopez, deprived Alex Aguilar of his particular rights under the United States Constitution; and

3. Defendant Hudlett directed his subordinates in the act(s) that deprived Alex Aguilar of these rights.

**CLAIM 3:**

**(a)**   **Claim:** 42 U.S.C. § 1983 Claim re: Objectively Unreasonable Medical Care (4th Amendment)

**(b)** **Defendants:** Medina, Melero, Pagulayan, City (*Monell*)[3]

**(c)** **Elements:**

(1) Individual defendants acted under color of law;

(2) Individual defendants deprived Mr. Aguilar of his rights under the constitution by providing objectively unreasonable medical care to Mr. Aguilar: (a) Mr. Aguilar faced a medical need; (b) defendants failed to provide objectively reasonable medical care in response to that need; and (c) the acts / failures to act of the defendants caused harm to Mr. Aguilar.;

(3) [CITY / *MONELL* ONLY:] Defendant City's policies, practices, customs and/or training or supervision were a moving force behind the individual defendants' deprivation of Mr. Aguilar's rights;

**(d)** **Summary of Key Evidence in Support of Claim:**

- Individual Defendants' statements & testimony re: events of June 9, 2016

- Photographs and video re: events of June 9, 2016

- Expert opinion testimony re: use of force; taser; LAPD policies, practices & training; first aid and emergency medical care; and Mr. Aguilar's injuries and indicated treatment options

- LAPD / POST policy and training document

**(e)** **Defendants' objections:**

Defendants contend that these are the appropriate elements for this claim:

1. Alex Aguilar suffered serious injury during the seizure (detention/arrest);

---

[3] The Court has ruled that Plaintiffs may not pursue their Fourth Amendment unreasonable medical care claims against Defendants Hudlett and Lopez. Order on MSJ (Dkt. No. 123) at 13:9-17. Plaintiffs nevertheless seek to present this issue at trial and preserve it for appeal. Plaintiffs do not abandon the claim against these defendants in this stipulated proposed Pretrial Conference Order.

Plaintiffs may not pursue their Fourth Amendment unreasonable medical claims against Defendants Hudlett and Lopez.  CBM 12/2/2018

2. Defendants were aware of Alex Aguilar's serious injury and need for medical care;

3. Defendants disregarded Alex Aguilar's need for medical care;

4. Defendants failed to take objectively reasonable steps to summon medical care for Alex Aguilar.

## CLAIM 4:

(a) **Claim:** Cal. Gov't Code § 845.6 Claim re: Failure to Summon Medical Care

(b) **Defendants:** Medina, Melero, Pagulayan, City (vicarious)

(c) **Elements:**

(1) defendant knew or had reason to know that Mr. Aguilar was in need of immediate medical care;

(2) defendant failed to take reasonable action to summon such medical care;

(3) Mr. Aguilar was harmed; and

(4) defendant's conduct was a substantial factor in causing Mr. Aguilar's harm.

(d) **Summary of Key Evidence in Support of Claim:**

- Individual Defendants' statements & testimony re: events of June 9, 2016

- Photographs and video re: events of June 9, 2016

- Expert opinion testimony re: use of force; taser; LAPD policies, practices & training; first aid and emergency medical care; and Mr. Aguilar's injuries and indicated treatment options

- LAPD / POST policy and training documents

**CLAIMS 5-7:**

**(a)**   **Claims:** Cal. Civ. Code § 52.1 claim re: interference with civil rights

**(b)**   **Defendants:** Medina, Melero, Pagulayan, Lopez, Hudlett, City (vicarious)

**(c)**   **Elements:**

(1) defendant interfered with or attempted to interfere with Mr. Aguilar's particular rights to be free from:

- excessive force (4th and 14th Amendments)

- deliberately indifferent medical care (14th Amendment)

- objectively unreasonable medical care (4th Amendment)

[*see supra* re: elements of particular rights violations]

(2) the interference or attempted interference was accompanied by threats, intimidation or coercion;

(3) Mr. Aguilar was harmed; and

(4) defendant's conduct was a substantial factor in causing Mr. Aguilar's harm.

**(d)**   **Summary of Key Evidence in Support of Claim:**

- Individual Defendants' statements & testimony re: events of June 9, 2016

- Photographs and video re: events of June 9, 2016

- Expert opinion testimony re: use of force; taser; LAPD policies, practices & training; first aid and emergency medical care; and Mr. Aguilar's injuries and indicated treatment options

- LAPD / POST policy and training documents

**(e)**   **Defendants' Objections:**

Defendants object to any theory based on a right to be free from "deliberately indifferent medical care" or "objectively unreasonable

9

medical care," as those theories were not alleged in the operative complaint, nor are they cognizable under the facts of this case.

Furthermore, Defendants contend that these are the appropriate elements for the claim:

1. That Defendants unreasonably acted violently against Alex Aguilar to prevent him or to retaliate against him for having exercised his right to be free from unlawful seizure or unlawful use of force;

2. That Alex Aguilar was harmed; and

3. That Defendants' conduct was a substantial factor in causing Alex Aguilar's harm.

## CLAIM 8:

(a)    **Claim:** Assault & battery (common law)

(b)    **Defendants:** Medina, Melero, City (vicarious)

(c)    **Elements:**

(1) defendant intentionally touched Mr. Aguilar or caused him to be touched;

(2) defendant used unreasonable force against Mr. Aguilar;

(3) Mr. Aguilar did not consent to the use of force;

(4) Mr. Aguilar was harmed; and

(5) defendant's use of unreasonable force was a substantial factor in causing Mr. Aguilar's harm.

(d)    **Summary of Key Evidence:**

- Individual Defendants' statements & testimony re: events of June 9, 2016

- Photographs and video re: events of June 9, 2016

- Expert opinion testimony re: use of force; taser; LAPD policies, practices, & training; and Mr. Aguilar's injuries

- LAPD / POST policy and training documents

**(e)** **Defendants' objections:**

Defendants contend that these are the appropriate elements for this claim:

1. That Defendants intentionally touched Alex Aguilar or caused Alex Aguilar to be touched;

2. That Defendants used unreasonable force to defend themselves, to defend others, to arrest or detain, to prevent the escape of, or to overcome the resistance of Alex Aguilar;

3. That Alex Aguilar did not consent to the use of that force; and

4. That Defendants use of unreasonable force was a substantial factor in causing Alex Aguilar's death.

**B.    CITY DEFENDANTS**

The City Defendants plan to pursue the following affirmative defenses:

***First Affirmative Defense:*** *Qualified Immunity*

1.    Whether Defendants' alleged conduct violated a constitutional right;

2.    If a constitutional right was violated, whether the constitutional right was "clearly established."

*See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures.

***Second Affirmative Defense:*** *Qualified Immunities (state)*

11

**(1)    Cal. Gov. Code, § 815.2(b):**  Injuries by Employee within Scope of Employment; Immunity of Employee

If the employee is immune from liability, Defendant City of Los Angeles also is immune from liability.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(2)    Cal. Gov. Code, § 820.2:**  Discretionary Acts

An employee of Defendant City of Los Angeles was exercising the discretion vested in him/her.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(3)    Cal. Gov. Code, § 820.8:**  Acts or Omissions of Others

An employee of Defendant City of Los Angeles cannot be held liable for an injury caused by the act or omission of another person.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video

- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(4)** **Cal. Gov. Code § 845.6:** Immunity

Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody, except when the employee knows or has reason to know that the prisoner is in need of immediate care and fails to take reasonable action to summon such medical care.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(5)** **Cal. Gov. Code § 845.8:** Immunity

Neither a public entity nor a public employee is liable for any injury caused by an escaping prisoner or a person resisting arrest.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(6)   Cal. Health & Safety Code § 1799.102:**  Immunity

No person who in good faith, and not for compensation, renders emergency medical or nonmedical care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission. The scene of an emergency shall not include emergency departments and other places where medical care is usually offered. This subdivision applies only to the medical, law enforcement, and emergency personnel specified in this chapter.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

***Third Affirmative Defense:***  *Self-Defense/Defense of Others*

1.   That Defendant's employees reasonably believed that Alex Aguilar was going to harm them or others; and

2.   That Defendant's employees used only the amount of force that was reasonably necessary to protect themselves or others.

*See* CACI 1304.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical

evidence about the Decedent's manner of death, and the autopsy of the Decedent.

***Fourth Affirmative Defense:*** Contributory Negligence

1.    That Plaintiff was negligent; and

2.    That Plaintiff's negligence was a substantial factor in causing his harm.

*See* CACI 405 (2009).

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

## B.   DEFENDANT MEDINA

Defendant Medina plans to pursue the following affirmative defenses:

***First Affirmative Defense:*** Qualified Immunity

1.    Whether Defendant's alleged conduct violated a constitutional right;

2.    If a constitutional right was violated, whether the constitutional right was "clearly established."

*See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants

- Photographs and video
- Expert testimony regarding police practices and procedures.

***Second Affirmative Defense:***  Qualified Immunities (state*)*

**(1)**   **Cal. Gov. Code, § 820.2:**  Exercise of Discretion

As a public employee, Defendant is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion is abused.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(2)**   **Cal. Gov. Code, § 820.4:**  Non-negligent Law Enforcement

As a public employee, Defendant is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(3)   Cal. Gov. Code, § 820.6:**  Good-faith Action

As a public employee, Defendant is not liable for an injury caused by his acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid, or inapplicable.

**Key Evidence in Support of Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(4)   Cal. Gov. Code, § 820.8:**  Acts or Omissions of Others

As a public employee, Defendant cannot be held liable for an injury caused by the act or omission of another person.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(5)   Cal. Gov. Code, § 822.2:**  Misrepresentations

Defendant was acting in the scope of his employment is therefore not liable for any injury caused by any alleged misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(6)** **Cal. Gov. Code § 845.6:** Immunity

Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody, except when the employee knows or has reason to know that the prisoner is in need of immediate care and fails to take reasonable action to summon such medical care.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(7)** **Cal. Gov. Code § 845.8:** Immunity

Neither a public entity nor a public employee is liable for any injury caused by an escaping prisoner or a person resisting arrest.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures,

medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(8)     Cal. Health & Safety Code § 1799.102:** Immunity

No person who in good faith, and not for compensation, renders emergency medical or nonmedical care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission. The scene of an emergency shall not include emergency departments and other places where medical care is usually offered. This subdivision applies only to the medical, law enforcement, and emergency personnel specified in this chapter.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**(9)     Cal. Health & Safety Code § 1799.106:** Immunity

A police officer or other law enforcement officer who renders emergency medical services at the scene of an emergency or during an emergency air or ground ambulance transport shall only be liable in civil damages for acts or omissions performed in a grossly negligent manner or acts or omissions not performed in good faith.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video

19

- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

***Third Affirmative Defense:***  Self-Defense/Defense of Others

1.      That Defendant's employees reasonably believed that Alex Aguilar was going to harm them or others; and

2.      That Defendant's employees used only the amount of force that was reasonably necessary to protect themselves or others.

*See* CACI 1304.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

***Fourth Affirmative Defense:***  Contributory Negligence

1.      That Plaintiff was negligent; and

2.      That Plaintiff's negligence was a substantial factor in causing his harm.

*See* CACI 405 (2009).

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video

20

- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**Fifth Affirmative Defense:**  Freedom from Excessive Fines

Plaintiff fails to state a claim for relief supporting punitive or exemplary damages, as this would violate Defendant's rights to substantive due process clause under the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of California.

**Key Evidence in Support of Affirmative Defense:**

- Testimony of Defendants
- Photographs and video
- Expert testimony regarding police practices and procedures, medical care administered to the Decedent, medical evidence about the Decedent's manner of death, and the autopsy of the Decedent.

**D.    PLAINTIFFS' OBJECTIONS TO DEFENDANTS' AFFIRMATIVE DEFENSES**

Plaintiffs object to all of the affirmative defenses set forth by the City Defendants and Defendant Medina on the grounds that they are inapplicable to one or more or all of Plaintiffs' claims (*e.g.*, the state law immunities and defenses do not apply to the federal claims; federal qualified immunity does not apply to the state law claims) and that the elements, to the extent they are stated, are stated incorrectly.

**8.      ISSUES TO BE TRIED**

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

1. Whether the force used by Defendants Medina and/or Melero against Decedent Alex Aguilar was unreasonable and in violation of the Fourth and Fourteenth Amendments and whether Defendants Medina, Melero, and/or Pagulayan participated in that force and/or failed to intervene to prevent that force;

2. Whether Defendants Medina, Melero, and/or Pagulayan violated Mr. Aguilar's Fourth and/or Fourteenth Amendment rights by disregarding his obvious signs and symptoms of an airway obstruction and failing to provide first aid or emergency medical care and failing to summon first aid and emergency medical care in response to Mr. Aguilar's serious medical need while continuing to use force on him;

3. Whether Defendants Melero, Pagulayan, Hudlett and/or Lopez violated Mr. Aguilar's Fourth and/or Fourteenth Amendment rights by not providing the medical care for which they were trained in response to Mr. Aguilar's serious and obvious medical need;

4. Whether acts or failure to act of Defendant Hudlett in his supervisory capacity were a moving force behind the violation of Mr. Aguilar's Fourth and Fourteenth Amendment rights by any individual defendant, with respect to the failure to provide first aid / emergency medical care to Mr. Aguilar;

5. Whether a policy, custom or practice of Defendant City of Los Angeles caused the violations of Mr. Aguilar's constitutional rights;

6. Whether Defendant City of Los Angeles' failure to properly train or supervise its officers caused the violations of Mr. Aguilar's constitutional rights;

7. Whether Defendants Melero, Medina, and/or Pagulayan violated California Government Code § 845.6 by failing to summon medical care for Mr. Aguilar during the use of force incident;

8. Whether Defendants Medina, Melero, Pagulayan, Hudlett, and/or Lopez interfered with Mr. Aguilar's rights or attempted to interfere with his rights by threats, intimidation, and/or coercion in violation of California Civil Code § 52.1;

9. Whether Defendants Medina and/or Melero assaulted and/or battered Mr. Aguilar;

10. Whether the conduct of the individual Defendants was malicious, oppressive, or in reckless disregard for Mr. Aguilar's and Plaintiffs' rights, giving rise to punitive damages;

11. Plaintiffs' entitlement to statutory damages under California Civil Code § 52.1 for any § 52.1 violation found by the jury [Defendants disagree that this is an issue to be tried];

12. The extent of attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code § 52.1(h), if Plaintiffs prevail on the merits [Defendants disagree that this is an issue to be tried].

## 9.   DISCOVERY

All discovery is complete.

## 10.   RULE 26(a)(3) DISCLOSURES: EXHIBITS

The joint exhibit list of the parties has been filed under separate cover as required by Local Rule 16-6.1 (Dkt. No. 126). Unless all parties agree that an

exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those listed below to which any party has objected.

| Ex. | Description / Name | Plfs' Objections | City Defs' Objections | Def Med. Objections |
|---|---|---|---|---|
| 1 | FID Interview of Police Officer II Sergio Melero – 6/10/2016 [Transcript] DEF 1246-1290 | (Object For Defs' Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 1a | FID Interview of Police Officer II Sergio Melero – 6/10/2016 [Recording] | (Object For Defs' Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 2 | Video: Aguilar Backseat Transport by GED | Portions inadmissible – FRE 401, 402, 403 (*see* Plfs' MIL #1) | | |
| 4 | LAPD Taser Evidence Sync Report (6-9-16) DEF 1756 | | | |
| 5 | Directive No. 4.4 -LAPD Use of Force Tactics Directive- Electronic Control Device Taser (dated December 2015) DEF 260-264 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 6 | Directive No. 14 – LAPD Use of Force Tactics Directive – Strikes and Kicks (dated December 2012) DEF 332-334 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 7 | FID Interview of Police Officer II Matthew Medina – 7/27/2016 [Transcript] DEF 1291-1339 | (Object For Defs' Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 7a | FID Interview of Police Officer II Matthew Medina – 7/27/2016 [Recording] | (Object For Defs' Use) – FRE 802, | FRE 802, 402, 403 | FRE 802, 402, 403 |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | 401, 402, 403 |  |  |
| 8 | Directive No. 9.2 – LAPD Use of Force Tactics Directive – Narcotics Ingestion (dated April 2014) DEF 256-258 |  | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 9 | TEAMS Report re: Matthew Medina DEF 1558-1861 | FRE 802 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 10a-g | POST Training Video - Airway Obstruction (excerpts) |  | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 11 | Video: Harbor Station Booking Area |  |  |  |
| 12 | Video: Harbor Station Watch Commander |  |  |  |
| 13 | Photos of Alex Aguilar's head after incident (scene / autopsy): DEF 240 (13a), DEF 136 (13b), 137 (13c), 128, 134, 195, 222, 246 |  |  |  |
| 14 | TEAMS Report re Sergio Melero DEF 1862-1865 | FRE 802 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 16 | FID Interview of Sgt. Andrew Hudlett – 6/10/2016 [Transcript] | (Object For Defs.' Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 16a | FID Interview of Sgt. Andrew Hudlett – 6/10/2016 [Recording] | (Object For Defs.' Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 17 | Watch Commander Report DEF 33-39 | FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 18 | FID Interview of PIII Dante Pagulayan – 6/15/2016 [Transcript] DEF 1566-1627 | (Object For Defs.' Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |

| | | | | |
|---|---|---|---|---|
| 18a | FID Interview of PIII Dante Pagulayan – 6/15/2016 [Recording] | (Object For Defs. Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 19 | FID Interview of Police Officer III Enrique Lopez – 6/10/2016 [Transcript] DEF 1196-1245 | (Object For Defs. Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 19a | FID Interview of Police Officer III Enrique Lopez – 6/10/2016 [Recording] | (Object For Defs. Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 20 | TEAMS Report re Dante Pagulayan DEF 1881-1884 | FRE 802 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 21 | TEAMS Report re Enrique Lopez DEF 1875-1880 | FRE 802 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 22 | Deposition Notice – PMK re Force, Ingestion, and Medical Care | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 24 | Learning Domain 34 – First Aid and CPR Version 5.2 [Excerpts] DEF 762-974 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 25 | LAPD Department Manual – 556.10 Policy on the Use of Force DEF 1113-15 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 26 | LAPD Use of Force Directive No. 1 – July 2009 DEF 1108-1111 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 28 | LAPD Use of Force Standard Chart (color version) DEF 1112 | | | |
| 36 | Deposition Notice – PMK re Taser Use | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 37 | Taser Pulse Logs DEF 2931-2935 | FRE 802, 401, 402, 403 | | |

| | | | | |
|---|---|---|---|---|
| 38 | Kroll Expert Report | FRE 802, 401, 402, 403 | | |
| 39 | Article: Ho – Respiratory Effect of Prolonged Electrical Weapon Applic on Human Volunteers 2007 | FRE 802, 401, 402, 403 | | |
| 40 | Kroll Supplemental Expert Report | FRE 802, 401, 402, 403 | | |
| 42 | Vilke Expert Report | FRE 802, 401, 402, 403 | | |
| 43 | Vilke CV | FRE 802, 401, 402, 403 | | |
| 46a | Chan Vilke 2007 Posters-Hyperventilation | FRE 802, 401, 402, 403 | | |
| 46b | Dawes et al. – The cardiovascular, respiratory, and metabolic effects of a long duration electronic control device exposure in human volunteers (2010) | FRE 802, 401, 402, 403 | | |
| 46c | Donald M. Dawes – CH. 14 Effects of CEWs on Respiration | FRE 802, 401, 402, 403 | | |
| 46d | Vilke et al. – The Effect of TASER on Cardiac, Respiratory and Metabolic Physiology in Human Subjects (Dec. 2011) | FRE 802, 401, 402, 403 | | |
| 46e | Van Meenan et al. – Respiratory and cardiovascular response during electronic control device exposure in law enforcement trainees (April 2013) | | | |

| | | | | |
|---|---|---|---|---|
| 46f | Ho et al. – Respiratory Effect of Prolonged Electrical Weapon Application on Human Volunteers (2017) | FRE 802, 401, 402, 403 | | |
| 47 | Vilke CV Appendix B – Prior Testimony | FRE 802, 401, 402, 403 | | |
| 48 | Vilke Supplemental Report | FRE 802, 401, 402, 403 | | |
| 50 | Katapodis Report | FRE 802, 401, 402, 403 | | |
| 51 | Katapodis CV | FRE 802, 401, 402, 403 | | |
| 51a | Katapodis CV | FRE 802, 401, 402, 403 | | |
| 52 | Katapodis Case List | FRE 802, 401, 402, 403 | | |
| 53 | Chief of Police Findings for In Custody Death, Force Investigation – dated 4-16-17 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 54 | Minority Opinion – Use of Force Review Board Recommendations – dated 3-20-17 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 56 | Autopsy Report | –Portions inadmissible – FRE 802, 401, 402, 403 (*see* Plfs' MIL #1) | | |
| 56a | Autopsy Diagram re: Abrasions (DEF 109) [redacted] | | | |

| | 56b | Autopsy Diagram re: Location of Taser Darts (DEF 110) | | | |
|---|---|---|---|---|---|
| | 57 | LAPD Watch Commander's Daily Report (6-9-16) | FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 58 | County of Los Angeles, Dept. of Coroner Investigator's Narrative | FRE 802, 401, 402, 403 | | |
| | 60 | FID Report of an In Custody Death | FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 61 | LA Board of Police Commissioner's Chief Decision | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 62 | FID Interview of Firefighter / Paramedic Francis Rodriguez - 7/8/2016 (a – Transcript; b – Recording) | (Object For Defs. Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 63 | FID Interview of Firefighter / Paramedic Joaquin Lapastora – 6/30/2016 (a – Transcript; b – Recording) | (Object For Defs. Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 64 | FID Interview of Firefighter / Paramedic Hans Enyedi – 7/8/2016 (a – Transcript; b – Recording) | (Object For Defs. Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 65 | FID Interview of Firefighter / Paramedic Captain Rodriguez – 6/20/2016 (a – Transcript; b – Recording) | (Object For Defs. Use) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 66 | Photos of bindle – DEF 114, 189-90 | | | |
| | 67 | Photos of blood in strip search cell – DEF 173, 181, 125 | | | |
| | 68 | Photos of booking area – DEF 152, 163 | | | |

| | | | | |
|---|---|---|---|---|
| 69 | Photos of location of body in cell – DEF 182-183 | | | |
| 70 | Photos showing location of darts – DEF 155, 166, 167, 227-35, 169, 156 (cropped / redacted) | | | |
| 71 | Photos of abrasions on back – DEF 207-08, 217 | FRE 401, 402, 403 (*see* Plfs' MIL # 1) | | |
| 72 | Photos of abrasions on back – DEF 209-10, 218 | | | |
| 73 | Photos of booking area, watch commander area, strip search cell from site inspection | | | |
| 74 | Video of booking area, watch commander area, strip search cell from site inspection | | | |
| 75 | Print out of Contact w/ Rescue Ambulance – DEF 15-16 | FRE 802, 401, 402, 403 | | |
| 76 | Diagram of Harbor Station booking area, watch commander area, strip search cell, etc. – DEF 31 | | | |
| 77 | LAFD Dispatch Print Out – PLA-234 | FRE 802, 401, 402, 403 | | |
| 78 | Prehospital Care Report Summary – PLA-227-33 (Redacted) | FRE 802, 401, 402, 403 | | |
| 79 | Facebook Posts – Alex Aguilar – PLA 312-446 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 80 | Photos of Alex Aguilar – PLA 283-311 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 81 | Memorial Book – Alex Aguilar – PLA 450-524 | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 82 | Letters Written From Alex Aguilar – PLA 276-82 | | FRE 802, 402, 403 | FRE 802, 402, 403 |

| | 1000 | Arrest report of Paul Anaya (DEF 0001-0009) | FRE 802, 401, 402, 403; compound exhibit | FRE 802, 402, 403 | FRE 802, 402, 403 |
|---|---|---|---|---|---|
| | 1001 | Adult Detention Log (DEF 0011) | FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 1002 | Incident Recall (DEF 0012-0016) | FRE 802, 401, 402, 403 | | |
| | 1003 | 911 Query (DEF 0017-0026) | FRE 802, 401, 402, 403 | | |
| | 1004 | CAD Summary Reports (DEF 0027-0028) | FRE 802, 401, 402, 403 | | |
| | 1005 | Crime Scene Sketch (DEF0031-0032) | | | |
| | 1006 | Watch Commander's and Sergeant's Daily Reports (DEF 0033-0050) | FRE 802, 401, 402, 403; compound exhibit | FRE 802, 402, 403 | FRE 802, 402, 403 |
| | 1007 | Prehospital Care Report Summary (DEF 0055-0070) | Portions – FRE 802, 401, 402, 403; compound exhibit | | |
| | 1008 | Department of Coroner Autopsy Report, Coroner's Report and Case Notes (DEF 0071-DEF 0111) | Portions – FRE 802, 401, 402, 403; compound exhibit | | |
| | 1009 | Autopsy Photographs (DEF 0112-0248) | FRE 802, 401, 402, 403; | | |

| | | | | |
|---|---|---|---|---|
| | | compound exhibit | | |
| 1010 | Training Documents re: Narcotics Ingestion (DEF 0255-DEF 258) | | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 1011 | Training Documents re: TASER device (DEF 0259-267) | (Object For Defs. Use - Portions) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 1012 | POST Learning Domain 20 – Use of Force (DEF 0466-0579) | (Object For Defs. Use - Portions) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 1013 | POST Learning Domain 34 – First Aid & CPR (DEF 0762-974) | (Object For Defs. Use - Portions) – FRE 802, 401, 402, 403 | FRE 802, 402, 403 | FRE 802, 402, 403 |
| 1014 | TASER Log (DEF 01756) | | | |
| 1015 | Decedent's Criminal History (DEF 1776-1800) | FRE 802, 401, 402, 403 (*see* MIL # 1) | | |
| 1016 | The Guidance Center records re: PA (produced via subpoena) | Portions (*see* MIL No. 4) – FRE 802, 401, 402, 403 | | |
| 1017 | Expert Reports & C.V. of Mark Knoll, Ph.D | FRE 802, 401, 402, 403 | | |
| 1018 | Expert Report & C.V. of James Katapodis | FRE 802, 401, 402, 403 | | |

| 1019 | Expert Reports and C.V. of Dr. Gary M. Vilke | FRE 802, 401, 402, 403 | | |
| 1020 | Expert Report & C.V. of Bryan Chiles | FRE 802, 401, 402, 403 | | |

## 11. RULE 26(a)(3) DISCLOSURES: WITNESSES AND DEPOSITION DESIGNATIONS

Witness lists of the parties have been filed with the Court as required by Local Rule 16-5 (Dkt. Nos. 125, 127, 129). Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with Local Rule 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by Local Rule 32-1:

- Deposition of Defendant Sergio Melero
- Deposition of Defendant Matthew Medina
- Deposition of Defendant Dante Pagulayan
- Deposition of Defendant Andrew Hudlett
- Deposition of Defendant Enrique Lopez
- Deposition of LAPD (Fed. R. Civ. P. 30(b)(6) Witness Justin Wade)
- Deposition of LAPD (Fed. R. Civ. P. 30(b)(6) Witness Michael Hall)

## 12. LAW AND MOTION MATTERS

The following law and motion matters and motions *in limine*, and no others, are pending or contemplated:

Plaintiffs' Motions:

    a.  Plaintiffs' Motion *in Limine* No. 1 To Exclude Inadmissible, Irrelevant and Prejudicial Information / Evidence Concerning the

Orders issued
on all motions
in limine.
CBM 10/2/2018

33

Decedent's Criminal History, Gang Affiliation, Drug Use, and Work History.

    b.  Plaintiffs' Motion *in Limine* No. 2 To Exclude Certain Expert Opinions by Defense Experts Vilke and Kroll.

    c.  Plaintiffs' Motion *in Limine* No. 3 To Exclude Certain Expert Opinions by Defense Expert Katapodis.

    d.  Plaintiffs' Motion *in Limine* No. 4 To Exclude Historical References to Decedent in P.A.'s Psychiatric Records.

    e.  Motion *in Limine* No. 5 To Exclude Cumulative Expert Opinions and Opinions of Defendants' Percipient Treating Experts.

City Defendants' Motions (joined by Defendant Medina):

    a.  Defendants' First Motion *in Limine* to Trifurcate Liability, Damages and *Monell* and Exclude Evidence of Individual Officers' Financial Condition.

    b.  Defendants' Second Motion *in Limine* to Exclude Evidence of Any Administrative Investigations or Proceedings Involving any of the Individual LAPD Officers.

    c.  Defendants' Third Motion *in Limine* to Exclude Evidence, Statements, Suggestions or Inferences, or other Incidents, Lawsuits, Claims, Verdicts, Settlements or Judgments Involving the City, the LAPD or Any of the Individual Defendants.

    d.  Defendants' Fourth Motion *in Limine* to Limit the Number of Damages Witnesses Called by the Plaintiffs Under F.R.E. 403.

    e.  Defendants' Fifth Motion *in Limine* to Preclude Expert Opinions Unexpressed in their Rule 26(a)(2)(B) and 26(a)(2)(C) Pursuant to F.R.C.P. Rule 37(c).

Defendant Medina's Motion (joined by City Defendants):

a. Defendant Medina's Motion *in Limine* No. 1 to Exclude Any Reference to the LAPD's Post-Incident Finding that Defendant Medina's Use of The Taser Ws Out of Policy and Any Discipline Recommended or Imposed.

## 13. BIFURCATION / SEVERANCE OF ISSUES

Defendants have moved to sever the trial into different phases, including a liability phase, a compensatory damages phase, a punitive damages phase, and a *Monell* liability phase, as set forth in Defendants' Motion in Limine No. 1 to Bifurcate / Trifucate (Dkt. Nos. 102, 109-110). Plaintiffs' oppose the motion, in part (Dkt. No. 137). Plaintiffs agree that there should be a separate phase to determine the amount of punitive damages, with entitlement to punitive damages being determined during the main phase of the trial. Depending on the Court's rulings on Plaintiffs' Motion in Limine No. 1 to Exclude Prior Bad Acts and Character Evidence (Dkt. No. 105), Plaintiffs may also request a separate phase for compensatory damages.

## 14. OTHER EVIDENTIARY ISSUES

a) Defendants do not intend to introduce any evidence or make any argument regarding a future conviction based on the events of June 9, 2016. Based on Defendants' representation, Plaintiffs did not file a Motion in *Limine* on this issue.

b) In support of damages, Plaintiffs will be offering evidence from Decedent Alex Aguilar's Facebook postings and photographs, including those compiled in a Memorial book. Defendants will not challenge the foundation for such evidence, *i.e.*, a custodian of records from Facebook will not be required to authenticate Decedent Alex Aguilar's postings.

c) Plaintiffs will be offering excerpts of video training on treating obstructed airways produced by California Peace Officers Standards and Training (POST) viewed by Defendants Medina, Melero, Pagulayan and Lopez in

*No bifurcation of issues except financial condition of officers if jury makes findings which would permit an award of punitive damages. CBM 10/2/18*

35

2014. Defendants will not challenge the foundation for such evidence, i.e., a custodian of records from POST will not be required to authenticate these video excerpts on airway obstructions.

d) Plaintiffs will not challenge the authenticity of items offered into evidence reflecting treatment of Decedent Alex Aguilar, i.e., a custodian of records from the Los Angeles Fire Department will not be required to authenticate paramedic reports.

e) Pursuant to his representations at his deposition, Defendants' Expert Mark Kroll withdrew the following opinions and portions of his report supporting those opinions and will not offer those opinions at trial:

    i.  Opinion No. 1: The use of electronic control capable of inducing neuromuscular incapacitation (NMI) by Ofc. Medina represented the safest force option available to control Mr. Aguilar. Other force techniques triple (3x) the injury rate compared to electronic control.

    ii.  Second Sentence of Opinion No. 2: [The electronic control of Mr. Aguilar] represented the best opportunity to attempt to save his life during his resistance.

\*\*\*

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

IT IS SO ORDERED.

DATED: 10/2/2018



_____
CONSUELO B. MARSHALL
United States District Judge

1  Dated: _____      _____

2                                CONSUELO B. MARSHALL

3                                United States District Court Judge

4  Approved as to form and content:

5

6  By: _____

7  Ronald O. Kaye
   KAYE, McLANE, BEDNARSKI & LITT LLP

8  Attorneys for Plaintiffs

9

10 By: _____

11 Ty A. Ford, Deputy City Attorney
   MICHAEL N. FEUER, CITY ATTORNEY

12 Attorneys for Defendants City of Los Angeles, Andrew Hudlett, Sergio Melero,

13 Dante Pagulayan, and Enrique Lopez

14

15 By: _____

16 Calvin House
   GUTIERREZ, PRECIADO & HOUSE LLP

17 Attorneys for Defendant Matthew Medina

18

19

20

21

22

23

24

25

26

27

28